UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman

| | |
|---|---|
| In re: | ) |
| | ) |
| HEALTHTRIO, INC., | )   Case No. 09-34404 HRT |
| | ) |
| Debtor. | )   Chapter 7 |
| | ) |

### ORDER ON MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on *Petitioning Creditors' Motion for Summary Judgment on the Involuntary Petition* (docket #27) (the "Summary Judgment Motion"). The Court has also reviewed and considered HealthTrio's *Response in Opposition to Motion for Summary Judgment and Cross-Motion to Dismiss Involuntary Petition and to Award [HealthTrio] Reasonable Attorneys' Fees and Costs* (docket #123) (the "Response and Cross Motion"); *Petitioning Creditors' Response to Alleged Debtor's Cross-motion to Dismiss Involuntary Petition and to Award Foreseeable Attorneys' Fees and Costs and Reply to Response in Opposition to Motion for Summary Judgment* (docket #127) (the "Cross-Motion Response"); and HealthTrio's *Reply in Support of Motion to Dismiss Involuntary Petition and to Award [HealthTrio] Reasonable Attorneys' Fees and Costs* (docket #131) (the "HealthTrio Reply").

Suffice it to say that the case has followed a long and convoluted path to its current posture. It has visited the Bankruptcy Court for the District of Delaware as well as this Court. It has had appeals pending in the District Court for the District of Delaware and the District Court for the District of Colorado as well as the Bankruptcy Appellate Panel for the Tenth Circuit and finally the Tenth Circuit Court of Appeals. It may not be surprising but it is highly regrettable that the end result is an involuntary case that has languished for over three years without either an order for relief or a dismissal.

Shortly after this case was commenced in Delaware, HealthTrio filed combined *Motions to Transfer Venue and to Dismiss; Answer and Counterclaims to the Involuntary Petition* (docket #5). In HealthTrio's Answer, it admitted that "[t]he debtor is a person against whom an order for relief may be entered under title 11 of the United States Code" and that "[t]he debtor is generally not paying such debtor's debts as they become due, unless such debts are the subject of a bona fide dispute as to liability or amount." It denied the allegation that "Petitioner(s) are eligible to file this petition pursuant to 11 U.S.C. § 303(b)." Thus the only issue controverted by HealthTrio's Answer is whether the Petitioning Creditors satisfy the requirements of § 303(b). Under the version of § 303(b) that was in effect on the petition date,

> An involuntary case against a person is commenced by the filing with the
> bankruptcy court of a petition under chapter 7 or 11 of this title–

ORDER ON MOTION FOR SUMMARY JUDGMENT
Case No. 09-34404 HRT

          (1)      by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $13,475 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

   . . .

11 U.S.C. § 303(b)(1) (2009).

A.   Johnson-Laird, Inc.; Order Denying Motion to Dismiss

The sole basis of HealthTrio's original motion to dismiss was its contention that Johnson-Laird, Inc., holds a debt that is subject to bona fide dispute. Notwithstanding the fact that HealthTrio's motion to dismiss was filed under Rule 12(b)(6), the Delaware bankruptcy court's *Order Denying Motion to Dismiss* (docket #9) recites that the parties consented to present evidence by way of affidavits and that, in addition to the affidavits, the court considered the parties' written memoranda and oral arguments made at hearing. Thus, the court's *Order Denying Motion to Dismiss* was not rendered on the pleadings alone under standards applicable under Rule 12(b)(6). Instead, the Delaware court's order was rendered following consideration of the parties' evidentiary submissions. That court found that "the Petitioning Creditors have satisfied the requirements of 11 U.S.C. § 303(b)(l)." That quote from the Delaware court's order is a bit over-broad because it was only the status of Johnson-Laird that was under consideration. Nonetheless, the factual issue concerning whether HealthTrio's debt to Johnson-Laird was subject to bona fide dispute has been fully resolved and this Court finds no justification for disturbing that factual determination.

The law of the case doctrine was argued by the parties but, strictly speaking, law of the case is a doctrine applicable to legal rulings only and not to factual determinations. *U.S. v. Parada*, 577 F.3d 1275, 1279-80 (10th Cir. 2009) ("The law of the case doctrine posits that when a court decides upon a *rule of law*, that decision should continue to govern the same issues in subsequent stages in the same case.") (emphasis added) (quoting *U.S. v. LaHue*, 261 F.3d 993, 1010 (10th Cir. 2001)). *See also Dedham Water Co., Inc. v. Cumberland Farms Dairy, Inc.*, 972 F.2d 453, 463 (1st Cir. 1992) ("It is elementary that the 'law of the case' doctrine . . . ordinarily applies to matters of law, not to matters of evidence.") (citing *Gospel Army v. Los Angeles*, 331 U.S. 543, 548 (1947)). On the other hand, the distinction may be somewhat academic because the same interest in finality of judicial rulings that undergirds law of the case doctrine surely comes into play when a court is asked to revisit a prior factual ruling.

HealthTrio asks the Court to reconsider a factual determination made by Judge Shannon earlier in the case. The Court has the discretion to do so anytime before entry of a final

ORDER ON MOTION FOR SUMMARY JUDGMENT
Case No. 09-34404 HRT

judgment or order. FED. R. CIV. P. (54)(b).[1] *See also U.S. v. LoRusso*, 695 F.2d 45, 53 (2nd Cir. 1982) ("[T]he power to grant relief from erroneous interlocutory orders, exercised in justice and good conscience, has long been recognized as within the plenary power of courts until entry of final judgment . . . .") (quoting *U.S. v. Jerry*, 487 F.2d 600, 604 (3rd Cir. 1973)). However, the interest in finality of court orders restrains the Court from continuously reconsidering prior interlocutory factual determinations absent good cause.

HealthTrio submits the same evidence and repeats that same arguments concerning its debt to Johnson-Laird in this Court that it presented to Judge Shannon in Delaware. This Court has reviewed the affidavits provided to Judge Shannon as well as the attached e-mails and other correspondence. In particular, the affidavit of Barbara Frederiksen is persuasive. Ms. Frederiksen's detailed testimony is backed up by the parties' contract for services; detailed invoices; and numerous pieces of correspondence. While there was significant correspondence concerning the amount of the billings for Johnson-Laird's services, Asma Hasan stated directly in one e-mail that HealthTrio was not protesting the amount of the bill. The Court's review of that evidence and of the parties' arguments persuades it that Judge Shannon's determination that the debt is not subject to a bona fide dispute is precisely the conclusion this Court would have reached even if it had reviewed the issue without the benefit of Judge Shannon's prior ruling. Therefore, the Court adopts Judge Shannon's determination and finds no reason to reopen that issue. The Court finds that HealthTrio's debt to Johnson-Laird, Inc., is not subject to bona fide dispute and that Johnson-Laird, Inc., is qualified to be a petitioning creditor under 11 U.S.C. § 303(b)(1).

B. Centennial River, Inc.; Standing vs. Capacity to Sue and Be Sued

Here, HealthTrio also argues that the involuntary petition must be dismissed because Centennial River Corporation lacked standing to be a petitioning creditor. HealthTrio's standing argument is based on its contention that Centennial River's corporate charter was not in good standing with the Delaware secretary of state on the date the involuntary petition was filed so it lacked the standing to invoke the jurisdiction of the bankruptcy court.

A party's lack of Constitutional standing to bring an action is a bar to a court's jurisdiction. If standing does not exist on the date an action is commenced, then it must be dismissed for lack of jurisdiction. But the lack of a corporate charter is not an issue of Constitutional standing. Instead, it is a matter of a litigant's capacity to sue. Under the federal rules, a corporation's capacity to sue or be sued is determined "by the law under which it was

---

[1] Applicable to bankruptcy proceedings pursuant to FED. R. BANKR P. 7054(a).

ORDER ON MOTION FOR SUMMARY JUDGMENT
Case No. 09-34404 HRT

organized." FED. R. CIV. P. 17(b)(2).[2] Moreover, a party's lack of capacity on the date an action is commenced does not create a jurisdictional defect that requires dismissal of a case. A lack of capacity may be cured. *Lewis v. Ascension Parish School Bd.*, 662 F.3d 343, 347 (5th Cir. 2011) ("Unlike standing, the lack of which cannot be waived or cured, capacity to sue can be cured.") (citing 6A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE (2010) § 1570, at 676).

Thus, the issues with respect to Centennial River are whether it had the corporate capacity to act as a petitioning creditor on the petition date and, if it did not, whether it's capacity to sue has been restored by reinstatement of its corporate charter and whether any such cure of its capacity to sue relates back to the date the involuntary petition was filed.

With the Petitioning Creditors' Cross-Motion Response, they have submitted a screen print of a corporate status inquiry taken from the web site of the Delaware Secretary of State (Exhibit B). That screen print shows that Centennial River Corporation is a corporation in good standing in the state of Delaware as of November 23, 2011. In the HealthTrio Reply, HealthTrio acknowledges that Centennial River's corporate charter has been revived as of November 23, 2011. Also contained in the Court's records and relied upon by HealthTrio in its Response and Cross-Motion is a similar report from the Delaware Secretary of State web site showing Centennial River's corporate status as of March 1, 2008, to be "void."[3] The undisputed evidence shows that Centennial River's Delaware corporate charter became void on March 1, 2008, and that it remained in such void status on the petition date.

Under Delaware law,

> All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct, bodies corporate *for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them*, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized. *With respect to any action, suit or proceeding begun by or against the corporation either prior to or within 3*

---

[2] Applicable to bankruptcy proceedings pursuant to FED. R. BANKR. P. 7017.

[3] *HealthTrio Inc's Memorandum of Points and Authorities in Support of its Reply Motion (I) to Compel Petitioning Creditors to Respond to Discovery and (II) to Stay Further Proceedings on Petitioning Creditors' Motion for Summary Judgment* (docket #12), Exhibit A.

ORDER ON MOTION FOR SUMMARY JUDGMENT
Case No. 09-34404 HRT

> *years after the date of its expiration or dissolution, the action shall not abate by reason of the dissolution of the corporation; the corporation shall, solely for the purpose of such action, suit or proceeding, be continued as a body corporate beyond the 3-year period and until any judgments, orders or decrees therein shall be fully executed*, without the necessity for any special direction to that effect by the Court of Chancery.

DEL. CODE ANN. tit. 8, § 278 (emphasis added).

> By its terms, Section 278 provides an automatic extension of corporate existence for three years. In addition, the Court of Chancery may extend the three-year period for any purpose relating to litigation or where additional time is needed for the winding up process. A further period of implicit corporate existence, of indefinite duration, is imparted by the statutory directive that no action for or against the corporation shall abate by reason of the dissolution of the corporation.

*City Investing Co. Liquidating Trust v. Continental Cas. Co.*, 624 A.2d 1191, 1195 (Del. 1993).

Under Delaware law, if Centennial River's charter became void on March 1, 2008, it continued its capacity to sue and be sued, for any purpose, through February 28, 2011. *Yukon Recovery, L.L.C. v. Certain Abandoned Property*, 205 F.3d 1189, 1193 n.1 (9th Cir. 2000) ("Delaware law provides an automatic three year extension of corporate existence for the purpose of prosecuting or defending any lawsuit begun prior to or within three years after corporate dissolution.").[4] Even after February 28, 2011, because this action was commenced during the automatic three year extension, this action was not abated upon the expiration of the three years. *City Investing Co. Liquidating Trust*, 624 A.2d at 1195.

In the case of *Q.E.R., Inc. v. Hickerson*, 880 F.2d 1178, (10th Cir. 1989) the Tenth Circuit reviewed a grant of directed verdict by the trial court. The trial court cited three different reason for its grant of directed verdict. *Id*. at 1181. The first of those was that the plaintiff was not the proper party in interest because it was a dissolved Delaware corporation at the time it filed its suit. As to that issue, the Tenth Circuit explained:

---

[4] HealthTrio cites the Court to DEL. CODE ANN. tit. 8, § 510 for the proposition that, when a Delaware corporation's charter becomes void "all powers conferred by law upon the corporation are declared inoperative." To the extent that § 510's broad declaration appears in conflict with § 278, the Court applies the common cannon of statutory construction that specific language controls over more general language so that of § 278 controls over § 510. *See, e.g., Busic v. U. S.*, 446 U.S. 398, 406 (1980) ("[A] more specific statute will be given precedence over a more general one . . . .") (citing *Preiser v. Rodriguez*, 411 U.S. 475, 489-490 (1973)).

ORDER ON MOTION FOR SUMMARY JUDGMENT
Case No. 09-34404 HRT

>   [Plaintiff] was incorporated under Delaware law. Delaware law provides that a
>   corporation is a recognized entity for the purpose of maintaining legal actions if
>   the action is brought within three years of its dissolution. DEL. CODE ANN. tit. 8,
>   § 278 (1983). This action was filed within a few months of [Plaintiff's]
>   dissolution. A dissolved corporation may maintain a federal suit when it has been
>   given the requisite power by state law.

*Id*.

The Court finds that Centennial River possessed the full capacity to sue and be sued in this action under Rule 17 on February 18, 2009, the date this involuntary petition was filed. Further, its corporate capacity did not lapse for the purpose of maintaining this action against HealthTrio after February 28, 2011, due to the continued pendency of this involuntary petition.

The only argument that HealthTrio raises with respect to Centennial River's qualification to be a petitioning creditor under 11 U.S.C. § 303(b)(1) is the fact that its corporate charter was void on the date the involuntary petition was filed. But, under Delaware law, it nonetheless maintained its capacity to sue and be sued on the petition date and the Court finds that Centennial River is a qualified petitioning creditor under § 303(b)(1).

Moreover, even without the three year grace period provided by § 278, the reinstatement of Centennial River's corporate charter cures any lack of capacity that may have existed on the petition date. The applicable section of the Delaware corporation law states:

>   *Upon the filing of the certificate in accordance with § 103 of this title the
>   corporation shall be renewed and revived with the same force and effect as if its
>   certificate of incorporation had not been forfeited or void pursuant to this title, or
>   had not expired by limitation. Such reinstatement shall validate all contracts,
>   acts, matters and things made, done and performed within the scope of its
>   certificate of incorporation by the corporation, its officers and agents during the
>   time when its certificate of incorporation was forfeited or void pursuant to this
>   title, or after its expiration by limitation, with the same force and effect and to all
>   intents and purposes as if the certificate of incorporation had at all times
>   remained in full force and effect.* All real and personal property, rights and
>   credits, which belonged to the corporation at the time its certificate of
>   incorporation became forfeited or void pursuant to this title, or expired by
>   limitation and which were not disposed of prior to the time of its revival or
>   renewal shall be vested in the corporation, after its revival and renewal, as fully
>   and amply as they were held by the corporation at and before the time its
>   certificate of incorporation became forfeited or void pursuant to this title, or
>   expired by limitation, and the corporation after its renewal and revival shall be as
>   exclusively liable for all contracts, acts, matters and things made, done or

ORDER ON MOTION FOR SUMMARY JUDGMENT
Case No. 09-34404 HRT

>performed in its name and on its behalf by its officers and agents prior to its reinstatement, as if its certificate of incorporation had at all times remained in full force and effect.

DEL. CODE ANN. tit. 8, § 312(e) (emphasis added). That section makes it clear that all of Centennial River's rights and obligations were reinstated upon the revival of its corporate charter and that such revival relates back to validate all acts taken by it during the time its corporate charter was forfeit. The Court concludes that under either DEL. CODE ANN. tit. 8 § 278 or § 312(e), Centennial River enjoyed the legal capacity to join this action as a petitioning creditor under § 303(b)(1).

C. Conclusion

As previously noted, HealthTrio admitted the allegations of the involuntary petition with the exception of the qualifications of the petitioning creditors under 11 U.S.C. § 303(b)(1). The only issues raised by HealthTrio under § 303(b)(1) are that the debt to Johnson-Laird, Inc., is subject to a bona fide dispute and that Centennial River Corporation, lacked standing to serve as a petitioning creditor. Neither contention is persuasive.

The issue as to Johnson-Laird was subject to a full and fair evidentiary hearing by Judge Shannon in the Delaware bankruptcy court. This Court's review of the same evidence and arguments considered by Judge Shannon reveals no cause to disturb that factual ruling.

In finding that Centennial River Corporation had the requisite corporate capacity to participate as a petitioning creditor under § 303(b)(1), the Court places its primary reliance on the Delaware Secretary of State web based document relied on by HealthTrio in both its earlier *HealthTrio Inc's Memorandum of Points and Authorities in Support of its Reply Motion (I) to Compel Petitioning Creditors to Respond to Discovery and (II) to Stay Further Proceedings on Petitioning Creditors' Motion for Summary Judgment* (docket #12) and in its Response and Cross-Motion. The document shows that Centennial River's charter became void on March 1, 2008. Because Delaware law provides that a void corporation's capacity to sue and be sued continues for three years following the date it becomes void, there is no basis to HealthTrio's contention that Centennial River lacked the standing, or the corporate capacity, to participate as a petitioning creditor.

As those are the only issues raised by HealthTrio in opposition to the involuntary petition and the facts relied upon by the Court are not subject to genuine dispute, it is proper to grant the petitioning creditors' Summary Judgment Motion and an order for relief shall enter.

To the extent that is might be advisable to explicitly do so, the Court will also vacate its prior *Order Granting Motion for Stay Pending Appeal* (docket #97)[5] in order to make clear that the chapter 7 trustee may proceed with administration of HealthTrio's bankruptcy estate. Therefore, it is

**ORDERED** that *Petitioning Creditors' Motion for Summary Judgment on the Involuntary Petition* (docket #27) is GRANTED. It is further

**ORDERED** that HealthTrio's *Cross-motion to Dismiss Involuntary Petition and to Award [HealthTrio] Reasonable Attorneys' Fees and Costs* (docket #123) is DENIED. It is further

**ORDERED** that the Court's *Order Granting Motion for Stay Pending Appeal* (docket #97) is VACATED. It is further

**ORDERED** that on consideration of the involuntary petition filed on February 18, 2009, against HealthTrio, Inc., an order for relief under chapter 7 of the Bankruptcy Code is hereby GRANTED.

Dated this __2nd__ day of May, 2012.

BY THE COURT:

Howard R. Tallman, Chief Judge
United States Bankruptcy Court

---

[5] The Court notes that Case No. 10-cv-1527 JLK remains pending but stayed in the District Court for the District of Colorado. That is the appeal filed originally in the District Court for the District of Delaware and transferred to Colorado by that court.