UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman

In re: )
 )  Case No. 09-34404 HRT
**HEALTHTRIO, INC.,** )
 )  Chapter 7
**Debtor.** )

### ORDER

This matter comes before the Court for hearing on the *Motion for Order: (i) Staying Case Proceedings, (ii) Reconsidering and Vacating Order for Relief, (iii) Awarding Comprehensive Compensatory and Punitive Damages and Sanctions, and (iv) Dismissing Case* (docket #247) (the "Omnibus Motion") filed by Malik M. Hasan, M.D. and Seeme G. Hasan (collectively, the "Hasans").

The Hasans seek reconsideration of the Court's *Order on Motion for Summary Judgment* (docket #132) ("Order for Relief"). The chapter 7 trustee (the "Trustee") opposes the Hassans Omnibus Motion (docket #254) as does the Centennial River Corp. (docket #258).

### I. BACKGROUND

This case was commenced in the District of Delaware on February 18, 2009, by the filing of an involuntary petition by Centennial River Corp. f/k/a Immedient Corporation, Axiom Systems, Inc., and Johnson-Laird, Inc. (hereinafter the "Petitioning Creditors") (docket #1) (the "Involuntary Petition"). On November 12, 2009, the Bankruptcy Court for the District of Delaware entered an order (docket #15) transferring venue of the case to this Court. Thereafter, upon a motion by the Petitioning Creditors for clarification of its order transferring venue, on December 10, 2009, the Bankruptcy Court for the District of Delaware entered an order for relief on the Involuntary Petition. That order for relief was the subject of various appeals. Ultimately, following a procedure suggested by the Tenth Circuit Court of Appeals in its Order of August 5, 2011, this Court entered its *Order Granting Motion to Reconsider Order for Relief in Light of Ruling on Appeal* (docket #118). That order vacated the earlier order for relief and set deadlines to posture the pending motion for summary judgment on the Involuntary Petition for decision by this Court. On May 2, 2012, the Court granted the motion for summary judgment and entered its own Order for Relief. The instant Omnibus Motion to reconsider this Court's Order for Relief was filed by the Hasans on April 25, 2013. After a protracted and contentious discovery process, the matter finally came to hearing.

### II. FINDINGS OF FACT

The Court finds the following as a result of evidence presented at the hearing of this matter conducted on October 4, 2013.

ORDER
Case No. 09-34404 HRT

1. Dr. Hasan is a creditor of the bankruptcy estate. Proof of Claim #4-2 was filed jointly by the Hasans, however, Dr. Hasan was the sole plaintiff in the underlying law suit upon which the claim is based. The claim is based on a judgment obtained against the Debtor on May 2, 2007, in the approximate amount of $21.8 million. That amount was offset by $5 million as a result of a foreclosure of the Hasans' security interest in the Debtor's assets. After adding post-judgment interest of approximately $2.64 million, the final claim amount totals roughly $19.44 million.

2. The Hasans are no longer shareholders, directors, officers or employees of the Debtor.

3. Centennial River Corporation ("Centennial") is one of the Petitioning Creditors in this involuntary case. Immedient Corporation ("Immedient") was Centennial's corporate predecessor.

4. Centennial holds a judgment (the "Judgment") against the Debtor. Proof of Claim #1-2 in the approximate amount of $1.75 million has been filed on its behalf.

5. Prior to 2003, Immedient was indebted to Deutsche Bank Trust Company Americas ("Deutsche Bank Trust") and Deutsche Bank Trust held a lien on Immedient's assets.

6. Immedient was a wholly owned subsidiary of Cape Success, LLC.

7. Deutsche Bank AG is the corporate parent of various related entities, including Deutsche Bank Trust. As a result of a March 2003 loan restructuring, which involved, among others, Cape Success, LLC, and Immedient, a Deutsche Bank AG controlled entity (unidentified in the record), became the owner of Cape Success Acquisitions Corporation, which, in turn, acquired a 80.17% ownership interest in Cape Success, LLC. The result of this ownership structure was that Deutsche Bank AG, through a series of intermediate entities, controlled Cape Success, LLC, which owned Immedient as one of its component entities. The bank's plan was to sell the various components of Cape Success, LLC, in order to recoup some portion of its unpaid loans.

8. As part of that plan for Deutsche Bank AG to recoup loan losses related to Cape Success, LLC, in 2005 Immedient sold substantially all of its assets to International Network Services, Inc. However, it excluded its causes of action against the Debtor from that sale and it maintained ownership of those causes of action.

ORDER
Case No. 09-34404 HRT

9. Following the sale of its assets, Immedient amended its articles of incorporation to change its name to Centennial.

10. Michael Roth is Centennial's only remaining officer.

11. At least two individuals, Allan Sorensen and Richard Budd III, continue to be recognized as members of Centennial's board of directors.

12. Deutsche Bank Trust holds a lien on substantially all of Centennial's assets, including Centennial's Judgment against the Debtor.

13. The law firm of Keevican Weiss Bauerle & Hirsch LLC ("KWBH") represented Immedient/Centennial in its lawsuit against the Debtor. On April 13, 2007, the Judgment was entered in the case of Immedient Corporation v. HealthTrio, Inc., Case No. 01C-08-216 RRC, Superior Court of the State of Delaware in and for New Castle County, in favor of Immedient/Centennial and against the Debtor in the total amount of roughly $1.75 million.

14. David Hirsch ("Hirsch") is a principal of the KWBH firm.

15. Hirsch represented Immedient/Centennial and, at one time, served the corporation in the capacity of an assistant secretary.

16. Hirsch executed the Involuntary Petition as "Attorney-in-Fact" for Centennial.

17. At the time Hirsch executed the Involuntary Petition, he possessed no actual authority to do so.

## III. DISCUSSION

The Debtor and Centennial are both incidental to the real dispute in this case, which is between KWBH and the Hasans. KWBH seeks to recover for its legal work in obtaining the Judgment against the Debtor. Deutsche Bank Trust holds a lien interest in the Judgment and would, presumably, like to realize on its security interest but it appears to have made the economic decision that it was no longer in its interest to fund KWBH's efforts to recover on the Judgment. Centennial does no business but continues to have an officer and board members who are capable of acting on its behalf. The same can be said of the Debtor. It has no business operations and, to all appearances, is now but an empty shell after the Hasans foreclosed their security interest in Debtor's assets.

ORDER
Case No. 09-34404 HRT

The Hasans have brought to light information, that if known to the Court earlier in these proceedings would have resulted in dismissal of the Involuntary Petition for lack of three petitioning creditors but, much like the position of KWBH with respect to Centennial, the Hasans are in no position to speak on behalf of the Debtor.

A.  Hirsch and KWBH Lacked Authority to Act as Centennial's Agent

This bankruptcy case was not commenced in accordance with 11 U.S.C. § 303(b)(1). KWBH was not given authority by Centennial to execute the Involuntary Petition on its behalf.

Hirsch testified that he had once been designated as an assistant secretary for Centennial and believed that he still occupied that position because he had never been advised by Centennial to the contrary. That portion of Hirsch's testimony is uncorroborated; no documentary evidence was offered at hearing to substantiate Hirsch's appointment. However, regardless of whether he occupied a position as one of Centennial's assistant secretaries on the petition date, the corporate by-laws that were admitted into evidence reveal that an assistant secretary of Centennial works only under the direction of senior corporate officers. An assistant secretary lacks authority to take independent binding action on the corporation's behalf.

Hirsch also testified that he made no effort to either obtain the signature of a corporate officer or to be given authority as "attorney-in-fact" to execute the Involuntary Petition on Centennial's behalf. There was no communication between anyone at KWBH and Centennial prior to Hirsch executing the Involuntary Petition purportedly on Centennial's behalf. The evidence was that Hirsch knew the name of at least one of Centennial's officers and sent a monthly billing statement to that officer. The evidence also showed that neither Hirsch nor anyone else at KWBH made an effort to contact any corporate officer prior to filing the Involuntary Petition.

Finally, Hirsch argues that he received authority from Deutsche Bank Trust to join the Involuntary Petition on Centennial's behalf. By the time the Involuntary Petition was filed in 2009, Deutsche Bank Trust was Centennial's lien holder and held a lien on its Judgment against the Debtor. It was not the owner of Centennial's shares; did not directly control Centennial (though Deutsche Bank AG did); and did not possess authority to authorize Hirsch and KWBH to act on Centennial's behalf.

Hirsch's contact with respect to his work on Centennial's Judgment was an attorney named Mark Fucci ("Fucci") who represents Deutsche Bank Trust but does not represent Deutsche Bank AG. Because of its lien interest in the Judgment, Deutsche Bank Trust had funded KWBH's collection efforts. In 2008, Deutsche Bank Trust decided to terminate its funding of KWBH's work. Thereafter, Hirsch and Fucci entered into negotiations for KWBH to continue its collection efforts. The end result of those negotiations was that KWBH could

ORDER
Case No. 09-34404 HRT

continue its work to collect Centennial's Judgment against the Debtor and that KWBH would receive a share of any amounts collected through its efforts to be applied to the substantial debt for attorney fees it earned during its representation of Centennial. As a condition to KWBH's acceptance of that deal, Hirsch told Fucci – in an e-mail exchange – that KWBH required "full control of and the authority to enter into and execute an agreement settling all claims." Fucci testified in his deposition that he had agreed to that proposal.

The Court concludes from the evidence that Fucci's authority to agree to Hirsch's proposal was limited to Deutsche Bank Trust's lienholder interest. There is no evidence that Fucci possessed any authority to agree on behalf of Centennial. Centennial was ultimately controlled by a Deutsche Bank AG affiliated entity[1] but Fucci confirmed in his deposition that he did not represent or speak for the Deutsche Bank AG. Deutsche Bank Trust is Fucci's client, his authority is limited to acting on behalf of Deutsche Bank Trust. The agreement that Hirsch and KWBH would have authority to settle the Judgment with the Debtor could not embrace the authority to execute the Involuntary Petition on Centennial's behalf.

Hirsch possessed neither valid express authority from his corporate client nor independent authority to act on behalf of Centennial.[2]

B. Centennial's Corporate Capacity and Failure to Join the Involuntary Petition

The primary basis upon which the Court entered its Order for Relief on May 2, 2012, was that, under DEL. CODE ANN. tit. 8, § 278, Centennial possessed the corporate capacity to sue and be sued at the time the Involuntary Petition was filed. The question of whether Centennial *could have* chosen to execute the Involuntary Petition is a very different question from whether or not it *did* choose to execute the Involuntary Petition. It could have; the Court's legal finding that § 278 gave Centennial the corporate capacity to execute the Involuntary Petition is unchallenged. Thus, evidence at hearing going to whether, subsequently, Centennial had effectively renewed its

---

[1] Centennial is no longer doing business. One reason – possibly the only reason – for its continued existence is its ownership of the Judgment against the Debtor. The Judgment was retained by Immedient when it sold its assets. At the time Immedient sold its assets and then changed its name to Centennial, its ownership was, through a series of intermediary entities, under the Deutsche Bank AG umbrella. The evidence contains no indication of any change in that ownership.

[2] When the issue of whether Centennial had effectively joined in the Involuntary Petition arose, KWBH neither sought ratification of Centennial's joinder by the existing board members nor did it seek out a another creditor to join the Involuntary Petition. It appears to the Court that KWBH could have chosen far easier courses of action to insure that the Involuntary Petition met the requirements of 11 U.S.C. § 303(b).

ORDER
Case No. 09-34404 HRT

corporate charter under Delaware law was largely irrelevant. The real question is whether Centennial did act to execute the Involuntary Petition. It did not. Centennial did not grant the attorneys at KWBH the authority to execute the Involuntary Petition and neither Hirsch nor KWBH possessed the independent authority to do so on Centennial's behalf.

C. The Order for Relief Should Not Have Entered

If the evidence that Centennial's attorneys had acted to sign the Involuntary Petition without corporate authority to do so had been available to the Court at the time it ruled on the Motion for Summary Judgment, the outcome of that proceeding would have been entirely different. Without three creditors who had effectively acted to execute the Involuntary Petition, 11 U.S.C. § 303(b)(1) would not have permitted entry of an order for relief in this case. If, at that time, the Court had evidence before it that Centennial had never authorized Hirsch to execute the Involuntary Petition, the Court's Order for Relief would not have entered.

But it did enter and the Order for Relief became a final order of this Court. Now, after determined discovery efforts in the face of determined opposition by KWBH, the Hasans have brought this evidence before the Court and seek to have the Court vacate its Order for Relief. However, the Hasans are third party creditors with no direct interest in the Involuntary Petition.[3]

D. Basis for the Omnibus Motion

The Hasans, through the Omnibus Motion, are primarily seeking for this Court to vacate its Order for Relief. They have not focused or directed their argument on any particular authority for the relief they seek. Instead, they have suggested a number of possibilities:

    A.    11 U.S.C. §303(i)(1) and (2) (as Centennial River was never a proper petitioning party);
    B.    11 U.S.C. §105(a);
    C.    28 U.S.C. §1927;
    D.    FED. R. BANKR. P. 9011(b) and (c);
    E.    This Court's inherent power to sanction abusive conduct as recognized in *In re Wilkinson*, 1996 U.S. App. LEXIS 30204, *3 (10th Cir. Nov. 26, 1996) and *Jones v. Bank of Santa Fe (In re Courtesy Inns)*, 40 F.3d 1084, 1089 (10th Cir. 1994);
    F.    18 U.S.C. §157 (filing of fraudulent involuntary petition constitutes a federal felony); and

---

[3] It does appear the Hasans are likely targets of any investigation that the Trustee may carry out, in the course of administering the estate, concerning the pre-petition disposition of the Debtor's assets.

ORDER
Case No. 09-34404 HRT

   G.  8 Del. Corp. Code §103(b)(2)(false affirmation under penalties of perjury).

Omnibus Motion at 11.

  Even if the Hasans are not particular about the authority for the remedy they seek, they are crystal clear as to the basis for the relief. They believe that KWBH has perpetrated a fraud on the Court. The Court, however, must be particular about the authority underlying its actions. As to the primary remedy the Hasans seek, the Court's annulment of its Order for Relief, the Hasans list of possible authorities overlooks the primary authority under the Federal Rules for a court to relieve a party from a final order or judgment: FED. R. CIV. P. 60(b).[4] In addition to Rule 60(b), at the request of an affected party or even on a court's own initiative, all federal courts possess inherent powers to craft an appropriate remedy where a court has acted based on the fraudulent misrepresentations of party appearing before it. That power includes the power to vacate a fraudulently procured judgment.

E. FED. R. CIV. P. 60(b)

  Under FED. R. CIV. P. 60(b), a *party* may obtain relief from a judgment or order under any one of six enumerated grounds:

   (1) mistake, inadvertence, surprise, or excusable neglect;
   (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
   (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
   (4) the judgment is void;
   (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
   (6) any other reason that justifies relief.

FED. R. CIV. P. 60(b) (emphasis added).

  The threshold issue under Rule 60(b), is whether the Hasans' Omnibus Motion is filed by "a party" as that term is used in Rule 60(b).

---

[4] Made applicable to this proceeding by FED. R. BANKR. P. 9024. The Court doubts that the Hasans' omission of Rule 60(b) from their list of possible authorities is an oversight as much as a frank recognition of their lack of standing to bring a motion under Rule 60(b). Nonetheless, Rule 60(b) must be the Court's starting point.

ORDER
Case No. 09-34404 HRT

F. Standing – the Hasans Are Not Proper Parties to Seek Relief under Rule 60(b)

      The Hasans are creditors of the Debtor and they are parties in interest in this bankruptcy case. But the fact that a party is a party in interest with respect to the case as a whole, does not confer standing to participate in all aspects of a bankruptcy proceeding or to raise any issue. The Court concludes the Hasans lack standing to seek reconsideration of the Court's Order for Relief.

      A standing inquiry addresses itself to two distinct species of standing:

> First, whether the [party] allege[s] "injury in fact," that is, a sufficiently concrete interest in the outcome of their suit to make it a case or controversy subject to a federal court's Art. III jurisdiction, and, second, whether, as a prudential matter, the [party is a proper proponent] of the particular legal rights on which they base their suit.

*Singleton v. Wulff*, 428 U.S. 106, 112 (1976).

      The issue of Article III standing goes to whether or not a particular party has the necessary attributes in order to invoke a court's Article III subject matter jurisdiction in the first instance. Article III standing is not an issue here because the Court already has subject matter jurisdiction.[5]

      The prudential standing requirement stands on different ground. The concept of prudential standing "embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'" *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11-12 (2004) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). The prudential requirement that the Hasans' Omnibus Motion has placed at issue here is the requirement that a movant "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests

---

[5] The Hasans argue that the requirements of 11 U.S.C. § 303(b) have not been met and the Court agrees. KWBH's failure to obtain authority from Centennial to join the Involuntary Petition on its behalf means that only two creditors executed the Involuntary Petition. Because the Debtor has at least twelve creditors, § 303(b)(1) requires at least three creditors to join in the Involuntary Petition. However, the fact that § 303(b)(1) was not satisfied at the commencement of the case does not destroy the Court's subject matter jurisdiction. A majority of courts to have addressed the question have found that the requirements for commencement of an involuntary petition in § 303(b) are non-jurisdictional in nature. *See, e.g., In re Trusted Net Media Holdings, LLC*, 550 F.3d 1035, 1041 (11th Cir. 2008), and the cases cited therein. *See also Adams v. Zarnel (In re Zarnel)*, 619 F.3d 156 (2nd Cir. 2010) (overruling *Key Mechanical Inc. v. BDC 56 LLC*, 330 F.3d 111 (2nd Cir. 2003)).

ORDER
Case No. 09-34404 HRT

of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (citing *Tileston v. Ullman*, 318 U.S. 44 (1943)).[6]

The Court has entered no order or judgment against the Hasans. It is the Debtor against whom the Court entered its Order for Relief. The Hasans' Omnibus Motion seeks to vacate relief entered against the Debtor – not relief entered against themselves. Through their Omnibus Motion, the Hasans seek to vindicate the Debtor's legal rights, not their own.

The evidence shows no basis upon which the Hasans possess any authority to speak for, or act on behalf of, the Debtor. Neither of the Hasans is a shareholder in the Debtor corporation. Neither is an officer, employee or other agent of the Debtor.

As a consequence, because the Hasans are not attacking relief entered against themselves and have no authority to assert the rights of the Debtor, they lack the prudential standing to bring their Omnibus Motion under Rule 60(b) on behalf of the Debtor because their claim for relief rests upon the rights of the Debtor and not upon their own rights.

A prudential standing inquiry is not jurisdictional in the way that an Article III standing inquiry is. Consequently, the factors the Court considers in a prudential standing analysis do not set up an absolute bar to the Court hearing the Hasans' plea in the same way that the failure to satisfy Article III jurisdictional requirements would. Nonetheless, the Court may depart from the prudential limitation that the Hasans will not be permitted to pursue a claim based upon the Debtor's rights and not their own "*only when* (1) the [movant] seeking to assert the third party's rights has otherwise suffered an injury-in-fact, (2) the relationship between the plaintiff and the third party is such that the plaintiff is nearly as effective a proponent of the third party's right as the third party itself, and (3) there is some obstacle to the third party asserting the right." *Region 8 Forest Service Timber Purchasers Council v. Alcock*, 993 F.2d 800, 809 (11th Cir. 1993) (citing *Singleton v. Wulff*, 428 U.S. 106, 113-16 (1976)) (emphasis added).

The above exception to the requirement that a proponent must assert its own rights is narrow. There must be a genuine alignment between the interests of the proper party – the Debtor in this case – and the party who seeks recognition to assert those interests. There is no evidence of such a commonality of interests.

Prior to the Involuntary Petition being filed, the Hasans were shareholders and creditors of the Debtor. The Debtor's debt to the Hasans was secured by assets of the Debtor. The Hasans

---

[6] The other two prudential standing requirements are generally recognized as "the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen v. Wright*, 468 U.S. 737, 751 (1984).

ORDER
Case No. 09-34404 HRT

sued the Debtor and obtained a judgment against it and they foreclosed their security interest in the Debtor's assets. According to the Hasans' proof of claim, foreclosure of the Debtor's assets satisfied less than 25% of the judgment of over $20 million. With post-judgment interest, they assert a claim in this bankruptcy case that exceeds $19 million. The Hasans have not directly addressed prudential standing requirements and have not argued that their interests are aligned with the Debtor. By all appearances, their interests are antagonistic to the Debtor. Certainly, there is nothing in the record the Court has before it that would support a finding that their interests are aligned. Nor is there evidence that the Debtor is unable to act through its authorized agents to advocate for its own interests.[7]

The Hasans lack prudential standing as a party who is entitled to bring a motion for relief from judgment under Rule 60(b). Yet, the Hasans have made the most serious of allegations. They have proven to the Court's satisfaction that Centennial did not act in its corporate capacity to execute the Involuntary Petition against the Debtor in this case. On that basis alone, had that evidence been before the Court when it entered its Order for Relief, the Court would not have done so. Far worse, the Hasans have accused Hirsch and KWBH of fraud.

G.  The Court's Inherent Powers

*1.  The Nature and Extent of the Courts' Inherent Powers*

The Hasans seek to enlist the Court's inherent powers to remedy the alleged abusive conduct of Hirsch and KWBH. In the case of *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), the Supreme Court discussed the inherent powers of the federal courts:

> It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."
>  . . . .

---

[7] On August 14, 2013, the Debtor purportedly filed its *Notice of Confession of Involuntary Petition and Support for Order for Relief* (docket #285). This was filed by authority of one Dennis Scruggs, who claims to have held in excess of 50% of shares in the Debtor on the petition date. The Hasans contest the validity of this pleading and the Court has not taken it into consideration with respect to this matter.

ORDER
Case No. 09-34404 HRT

> Of particular relevance here, the inherent power also allows a federal court to vacate its own judgment upon proof that a fraud has been perpetrated upon the court. This "historic power of equity to set aside fraudulently begotten judgments," is necessary to the integrity of the courts, for "tampering with the administration of justice in [this] manner . . . involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." Moreover, a court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud.
> There are other facets to a federal court's inherent power. The court may bar from the courtroom a criminal defendant who disrupts a trial. It may dismiss an action on grounds of *forum non conveniens*; and it may act *sua sponte* to dismiss a suit for failure to prosecute.

*Id*. at 43-44 (citations omitted). The Tenth Circuit Court of Appeals has held that bankruptcy judges may exercise those same inherent powers by virtue of 11 U.S.C. § 105. *In re Courtesy Inns, Ltd., Inc.*, 40 F.3d 1084, 1089 (10th Cir. 1994) ("We believe, and hold, that § 105 intended to imbue the bankruptcy courts with the inherent power recognized by the Supreme Court in *Chambers*.").

While it is clear that this Court possesses the power to fashion an appropriate remedy for acts that are an abuse of the Court's jurisdiction and authority, it is also clear that it must exercise restraint in exercise of those powers.

> [W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.

*Chambers*, 501 U.S. at 50. *See also Courtesy Inns*, 40 F.3d at 1089.

Both the Supreme Court and the Tenth Circuit Court of Appeals are clear in their expectation that the inferior courts will first look to applicable statutes and rules of procedure for authority to sanction bad faith conduct that is abusive of the judicial system before relying on their inherent powers.

The *Chambers* case is instructive. There, the Supreme Court reviewed a district court's use of its inherent powers to sanction an abusive litigant. Mr. Chambers, the sole shareholder of Calcasieu Television and Radio, Inc. ("CTR"), the owner of radio and television broadcast facilities, signed a contract to sell the facilities and licenses to NASCO. Chambers later changed his mind about the sale. When given notice of the suit seeking specific performance and a TRO,

ORDER
Case No. 09-34404 HRT

Chambers and his attorney acted to alienate the properties and Chambers' counsel actively misled the district court such that the court's jurisdiction over the disputed properties was frustrated. Chambers and his counsel defied the district court's preliminary injunction and filed numerous frivolous pleadings for the purpose of delaying the proceedings. After the matter finally went to trial and before the district court rendered it opinion, Chambers filed applications with the FCC that, if approved, would have rendered any judgment granting specific performance of the sale agreement meaningless. After the district court rendered judgment in NASCO's favor, Chambers caused CTR to oppose the transfer of the broadcast licenses to NASCO in filings with the FCC. Finally, before the sale was closed pursuant to the district court's order, Chambers removed the broadcast equipment from the facilities which required further court intervention. Upon Chambers' appeal of the district court judgment, the Fifth Circuit found the appeal frivolous and assessed appellate sanctions. It also remanded to the district court to consider further sanctions.

Upon remand, the district court relied on its inherent powers to sanction Chambers by ordering him to pay nearly $1 million to compensate NASCO for the full amount of its attorney fees. The district court found that Chambers and the other defendants had "(1) attempted to deprive this Court of jurisdiction by acts of fraud, nearly all of which were performed outside the confines of this Court, (2) filed false and frivolous pleadings, and (3) attempted, by other tactics of delay, oppression, harassment and massive expense to reduce plaintiff to exhausted compliance." *NASCO, Inc. v. Calcasieu Television and Radio, Inc.*, 124 F.R.D. 120, 138 (W.D. La. 1989). Before resorting to its inherent powers, the district court considered and rejected sanctions under Rule 11[8] and under 28 U.S.C. § 1927.[9] Much of the offensive conduct took place outside of the court case and outside of the court. The district court deemed both Rule 11 and § 1927 insufficient to address the abusive conduct of Chambers himself.

In *Chambers*, the district court's sanctions order was affirmed by both the Fifth Circuit and the Supreme Court. In affirming, the Supreme Court cautioned that "the court ordinarily should rely on the Rules rather than the inherent power," *Chambers*, 501 U.S. at 50, but that a court "may safely rely on its inherent power," *Id*. when "neither the statute nor the Rules are up to the task." *Id*.

The Hasans have alleged that KWBH has committed fraud. Rule 60(b) allows a court to vacate its judgment based on a fraud on the court but only when the fraud is brought to the

---

[8] Rule 11 generally allows a court to sanction parties or their counsel on account of pleadings filed in the case that are frivolous; filed for an improper purpose; or contain factual assertions that are not made in good faith.

[9] Title 28 U.S.C. § 1927 allows a court to sanction an attorney who "unreasonably and vexatiously multiplies proceedings before the court."

ORDER
Case No. 09-34404 HRT

Court's attention by a party who has an interest in the subject matter of the original judgment. Where, as here, fraud is alleged by one who is not entitled to bring a motion under Rule 60(b), to end the inquiry at that procedural rule would leave a court powerless to correct the most manifest of injustices, a court judgment procured by fraudulent means. Thus, where it is alleged that a court order has been procured by fraud but the allegation is made by one who is not a party to the order who may bring a motion under Rule 60(b), the Court finds that the rule is inadequate to the task of preventing an abuse of the Court's authority. *Hazel-Atlas Co. v. Hartford Empire Co.*, 322 U.S. 238, 246 (1944) ("The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud."). Therefore, if the Court determines that the Order for Relief was procured as a result of fraud perpetrated on this Court by Hirsch and KWBH, it may rely on its inherent powers as a federal court to craft the appropriate remedy.

### 2. *Hirsch and KWBH Have Not Committed Fraud on the Court*

The Court has considered but rejects the Hasans' contention that the Court should vacate the Order for Relief by use of its inherent powers because Hirsch and KWBH have committed fraud on the Court. In making that determination, the Court has largely disregarded evidence concerning renewals of the corporate charter that occurred following the filing of the Involuntary Petition. Those renewals were not necessary to give Centennial the ability to participate in the Involuntary Petition. Even if, as the Hasans claim, the *post hoc* renewals of the corporate charter were fraudulent, the validity of the Order for Relief would be unaffected because it was not based on those renewals. The Court never acted in reliance on either of them.[10]

Instead, the focus of the fraud inquiry must be on the intentions and state of mind of Hirsch and KWBH at the time they purported to execute the Involuntary Petition on behalf of Centennial. In particular, the Court's focus is on Hirsch's state of mind and intention at the time he claimed to be acting as Centennial's attorney-in-fact.

> Fraud on the court (other than fraud as to jurisdiction) is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. It has been held that allegations of nondisclosure in pretrial discovery will not support an action for fraud on the

---

[10] In the Order for Relief, the Court did cite renewal of the corporate charter as an alternate ground to support its finding that Centennial possessed the corporate capacity to join the Involuntary Petition. However, the Court relied primarily on DEL. CODE ANN. tit. 8, § 278.

ORDER
Case No. 09-34404 HRT

> court. It is thus fraud where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function – thus where the impartial functions of the court have been directly corrupted.

*Bulloch v. U.S.*, 763 F.2d 1115, 1121 (10th Cir. 1985) (citing *H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1118 (6th Cir. 1976)).

"[T]he party alleging fraud on the court bears a heavy burden to prove the fraud by clear and convincing evidence, and 'all doubts must be resolved in favor of the finality of the judgment.'" *Orient Mineral Co. v. Bank of China*, 416 Fed. Appx. 721, 725 (10th Cir. 2011) (quoting *Bulloch*, 763 F.2d at 1121)). " Indeed, a party alleging fraud on the court must demonstrate 'conscious wrongdoing [, which] can properly be characterized as a deliberate scheme to defraud[,] before relief from final judgment is appropriate.'" *Id*. (quoting *Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1267 (10th Cir. 1995)).

The Court does not have clear and convincing evidence before it that, taken as a whole, persuades it that the actions of Hirsch and KWBH were intended to perpetrate a fraud on the Court. But, the issue is not without difficulty.

Rule 11 specifies that whenever an attorney files a pleading in federal court, the attorney's signature constitutes a certification of such matters as a reasonable belief in the truth of factual assertions and the lack of an improper purpose for filing the pleading. FED. R. CIV. P. 11(b).

Another representation, which is implied any time an attorney files a pleading on behalf of a party, is that an attorney-client relationship exists between the attorney and the party and that the party has authorized the filing. RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 25 ("A lawyer who enters an appearance before a tribunal on behalf of a person is presumed to represent that person as a client."). *See also Federal Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 175 (10th Cir. 1992) ("While [the attorney] clearly purported to act on behalf of Appellants, the critical issue is whether Appellants authorized him to do so.").

Here, Hirsch went beyond any implied representation that an entry of appearance on behalf of Centennial may constitute. He represented to the Court that he is Centennial's attorney-in-fact. An attorney-in-fact is a legal agent for a person or entity. BLACK'S LAW DICTIONARY 124 (7th ed. 1999). An agency relationship "is created by a principal's manifestation to an agent that, as reasonably understood by the agent, expresses the principal's assent that the agent take action on the principal's behalf." RESTATEMENT (THIRD) OF AGENCY § 3.01. Hirsch testified, without contradiction in the record, that a Mike Roth and Ron Munkittrick had instructed him to work with Deutsche Bank Trust with respect to collection of the Judgment. Roth was an officer

ORDER
Case No. 09-34404 HRT

in the 2005 to 2007 time-frame when that authorization was given and Munkittrick was a director.

To the extent that Roth and Munkittrick's instructions to Hirsch can be construed as a manifestation of authority to act on Centennial's behalf, the authority is vague. But vague as it might be, it weighs against the Hasans' allegation of fraud on the part of Hirsch and KWBH.

Between the lien of Deutsche Bank Trust in the Judgment and KWBH's attorney's lien,[11] Deutsche Bank Trust and KWBH are the only parties with a beneficial interest in the Judgment. Centennial's interest is in name only. Centennial will not benefit from any collections that are made on the Judgment. As a consequence, Centennial's remaining officers or directors have no incentive to be involved in any of the decision making concerning collection or settlement of the Judgment. It is reasonable and consistent with economic reality for Centennial to give full authority to its attorneys, in conjunction with its secured creditor, to collect or settle the Judgment.

Whether an instruction to Hirsch and KWBH to work with the secured creditor to collect the Judgment can reasonably be understood as a manifestation of broader agency authority is another matter. In the Court's conception, authority to pursue collection or settlement of a judgment debt is quite different from the authority to cause Centennial to join as a petitioning creditor in an involuntary bankruptcy petition. The inclusion of a party on the Involuntary Petition that had never authorized its joinder resulted in the commencement of a case that would not have been commenced otherwise. KWBH's actions – fraudulent or not – resulted in the improper entry of the Order for Relief.

The Tenth Circuit instructs that the standard for setting aside a final judgment based on a fraud on the court must be a high one in order to balance the interest of finality and repose against a court's desire to unwind a judgment that, as in this case, would not have entered had the Court been fully informed.

> We think it clear that "fraud on the court," whatever else it embodies, requires a showing that one has acted with an intent to deceive or defraud the court. A proper balance between the interests underlying finality on the one hand and allowing relief due to inequitable conduct on the other makes it essential that there be a showing of conscious wrongdoing – what can properly be characterized as a deliberate scheme to defraud – before relief from a final judgment is appropriate under the *Hazel-Atlas* standard. Thus, when there is no intent to deceive, the fact

---

[11] Delaware recognizes the common law attorney's charging lien. *See Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Memorial Hosp., Inc.*, 36 A.3d 336, 342 (Del. Supr. 2012).

ORDER
Case No. 09-34404 HRT

> that misrepresentations were made to a court is not of itself a sufficient basis for setting aside a judgment under the guise of "fraud on the court."

*Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1267 (10th Cir. 1995) (citing *Hazel-Atlas Co. v. Hartford Empire Co.*, 322 U.S. 238 (1944)).

In its simplest terms, the question for the Court is whether Hirsch's misrepresentation of his status as Centennial's attorney-in-fact was done knowingly as part of a "deliberate scheme to defraud" the Court such that the annulment of the Court's Order for Relief can be justified.

KWBH had an attorney-client relationship with Centennial with regard to the lawsuit against the Debtor that resulted in the Judgment and, subsequently, with regard to collecting the Judgment. Even though Centennial is the nominal owner of the Judgment it has no beneficial interest. Deutsche Bank Trust and KWBH are the parties with the economic interest in the Judgment and Hirsch testified in his deposition that Roth and Munkittrick had instructed him to work with Deutsche Bank Trust pursuing collection of the Judgment. Thereafter, KWBH worked for some years with Deutsche Bank Trust with respect to those collection efforts and it was Deutsche Bank Trust, not Centennial, that paid KWBH's bills. The evidence shows that, after Deutsche Bank Trust decided it would no longer fund the collection efforts, Hirsch corresponded with Fucci to negotiate a new arrangement. Ultimately, KWBH accepted Deutsche Bank Trust's proposal to divide any collections on the Centennial Judgment on condition that KWBH be given full authority to settle the Judgment. In his deposition, Fucci testified that he accepted KWBH's condition.

According to Fucci, a Deutsche Bank AG entity, through ownership of Cape Success Acquisitions Corporation, is Centennial's controlling shareholder. However, Fucci's client, Deutsche Bank Trust, is not within that chain of entities. In his deposition, Fucci stated that his authority extended no farther than speaking on behalf of Deutsche Bank Trust. He could not speak for Centennial nor could he speak for Deutsche Bank Trust's corporate parent, Deutsche Bank AG. Fucci had no authority to speak for Centennial yet he acted as if he possessed such authority and negotiated a new collection arrangement with KWBH.

The lines of authority were muddled. Deutsche Bank Trust's lien on the Judgment gave it the beneficial interest in the Judgment. KWBH shared the beneficial interest by virtue of its Delaware common law attorney's charging lien. By direction of Centennial, Hirsch and KWBH had worked for some years with Fucci and Deutsche Bank Trust to collect the Judgment. When taken as a whole, the evidence is hardly clear and convincing that Hirsch and KWBH engaged in a scheme to defraud the Court. They were – albeit with murky authority – engaged in a continuation of their long-running efforts to collect on the Judgment they had obtained on Centennial's behalf and to satisfy their outstanding attorney fees. However, filing the

ORDER
Case No. 09-34404 HRT

Involuntary Petition escalated those collection efforts beyond any previous authority exercised by Hirsch and KWBH.

Hirsch's and KWBH's actions *are* worthy of censure. In signing the Involuntary Petition, in reliance on Deutsche Bank Trust's blessing and without seeking the authority of Centennial's existing corporate board members or remaining officer, they were certainly careless – even reckless – with regard to their authority to do so.

H. The Court Will Require Proof of KWBH's Continuing Authority to Represent Centennial

Unless and until KWBH submits evidence of its continuing attorney-client relationship with Centennial – specifically with respect to this involuntary case – the Court will consider no more filings from KWBH on Centennial's behalf. Rarely does the Court have reason to question whether attorneys appearing and filing pleadings on behalf of a purported client actually do have an attorney-client relationship with the party they allegedly represent in relation to the particular matter before the Court. However, the evidence the Court has heard raises that question in the Court's mind. KWBH will be directed to remove that doubt by submitting an affidavit or similar evidence of its authority to appear as Centennial's attorneys in this case.

I. Sanctions

The Court has previously found that an assessment of sanctions against KWBH is in order with respect to its lack of timely and complete discovery responses to the Hassans. *See Minutes of Proceedings* (docket #213). The Hasans' counsel filed *Hasans' Affidavit of Fees and Costs Sought as Sanctions Against Centennial River Corp. And its Counsel* (docket #243) based upon the dispute that culminated in a hearing on January 4, 2013. Hasans seek attorney fees and costs in the amount of $39,747.80. KWBH has objected (docket #249) on various grounds. The Court will enter an award of attorney fees in favor of the Hasans and against KWBH in the amount of $20,250.00

The Court will not itemize the allowed charges. It has reviewed the billing statements attached to counsel's affidavit of fees in detail. The Court disallowed those entries that were redacted to the point that the Court was unable to determine the time entry's connection to the discovery dispute. The Court also disallowed charges for time the Hasans' counsel spent relative to the trustee election and other matters that were not related to the discovery dispute. The Court allowed those charges relating to counsel's many communications with KWBH concerning tardy and incomplete discovery. All fees relating to drafting and prosecution of discovery motions have been allowed. Time relative to preparation of the fee affidavit has been allowed. Where a single time entry covered multiple items, some allowable and others not, the time entry was reduced accordingly.

ORDER
Case No. 09-34404 HRT

While the magnitude of the fee award is on the high side, it is clear that KWBH was not forthcoming in its responses. The Court's review of the record persuades it that it was KWBH's actions that required the extraordinary volume of correspondence and motions with respect to its compliance with discovery obligations. KWBH is responsible for that additional time and effort on the part of the Hasans' counsel and the award of fees is justified.

### J. Damages

The Hasans' request for damages will be denied. The Petitioning Creditors filed the Involuntary Petition against Health Trio, Inc. For the same reasons that the Hasans lack prudential standing to seek relief under Rule 60(b), because they are not the interested parties with respect to the Order for Relief, they lack the standing to seek damages against the Petitioning Creditors – or Hirsch and KWBH – on account of an Involuntary Petition filed against the Debtor.

### IV. CONCLUSION

Where the interest of finality of court judgments clashes with allegations of misbehavior against a party in whose favor a judgment has been entered, the burden for a party seeking to vacate such an order is high. The Court's Order for Relief stood for nearly a year prior to the filing of the Omnibus Motion. A lengthy process of selecting a trustee followed the Order for Relief and, after being selected, the Trustee has moved forward in reliance on that order.

Hirsch and KWBH have, in the Court's view, played fast and loose with the judicial system and this Court. Yet, the evidence is not clear and convincing that Hirsch and KWBH intentionally engaged in a scheme to defraud the Court. That is the standard and, because that standard has not been satisfied, the Order for Relief must stand.

In accordance with the above discussion, it is

**ORDERED** that *Motion for Order: (i) Staying Case Proceedings, (ii) Reconsidering and Vacating Order for Relief, (iii) Awarding Comprehensive Compensatory and Punitive Damages and Sanctions, and (iv) Dismissing Case* (docket #247) is GRANTED IN PART and DENIED IN PART:

- a) the Hasans' request to stay court proceedings is DENIED;
- b) the Hasans' request to reconsider and vacate the Order for Relief is DENIED;
- c) the Hasans' request for damages is DENIED;
- d) the Court hereby awards discovery sanctions, in accordance with the Court's prior Minutes of Proceeding Order dated January 4, 2013, payable immediately to Glenn Merrick, as counsel, and Malik M. Hasan, M.D. and Seeme G. Hasan by

ORDER
Case No. 09-34404 HRT

        the firm of Keevican Weiss Bauerle & Hirsch LLC in the amount of $20,250.00; and

e)    the Hasans' request for dismissal is DENIED. It is further

**ORDERED** that the firm of Keevican Weiss Bauerle & Hirsch LLC shall not file any pleading on behalf of Centennial River Corporation until it has submitted an affidavit or similar evidence, acceptable to this Court, proving its authority to appear as Centennial's attorneys in this case.

    Dated this  11th  day of December, 2013.

                                                 **BY THE COURT:**

*Howard Tallman* (signature)
Howard R. Tallman, Chief Judge
United States Bankruptcy Court